MARY MERRITT. The (UNITED STATES v.). See Case No. 15,733.

## Case No. 9,223.

### The MARY PATTEN.

### The STAR OF THE EAST.

[2 Lowell, 196.] [1]

District Court, D. Massachusetts.   Dec., 1872.

COLLISION—BOTH IN FAULT—CLAIM FOR SALVAGE —TOWAGE—COSTS.

1. In a collision cause in which a steamer and a sailing-vessel were both found to be in fault, and the steamer, after the collision, had towed the schooner into port,—*Held*, an allowance might be made for towage as part of the damage suffered by the steamer, but not for salvage.

[Cited in Leonard v. Whitwill, 19 Fed. 549.]

2. When, in such a case, both vessels were injured, and there was no ground for discriminating between them, the costs as well as damages were divided.

[Quoted in Vanderbilt v. Reynolds, Case No. 16,839. Cited in Memphis & St. L. Packet Co. v. H. C. Yaeger Transp. Co., 10 Fed. 396.]

3. It seems, that if one party suffers all the damage, and both are in fault, the libellant recovering half damages, should usually recover full costs.

[Cited in Vanderbilt v. Reynolds, Case No. 16,839. Disapproved in The Pennsylvania, 15 Fed. 815. Cited in The Hercules, 20 Fed. 205.]

In admiralty.

LOWELL, District Judge. The parties have agreed to accept the assessor's report upon all matters of fact, and have submitted to me the questions of salvage and of costs. The steamer took the schooner in tow after the collision, and, still later, hired a tug that completed the service. When deciding the general merits of the case, I intimated the opinion that towage might perhaps be allowed; and I then understood that the libel for salvage would not be pressed if the steamer was found to be in fault. But my decision being that both vessels were in fault, the question has been brought up again. If the steamer had been solely to blame, there could be no claim for either towage or salvage, because all the loss which the other party had sustained, including towage and salvage, would be chargeable to the steamer; and whether she did the work herself, or paid others to do it, would be immaterial. On the other hand, if the fault were wholly that of the injured vessel, and she chose to accept salvage services, she might perhaps be bound to pay for them as such. How is it in case both were in fault? The master and crew of a vessel which has been in collision with another vessel, and has not been crippled, are morally bound to stand by and save life at least, and often to aid in saving property too, if possible. In England, a statute makes a neglect of this duty presumptive evidence of fault in respect to the collision itself; and

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

possibly without the statute a judge might find it to be so under some circumstances. It was the practice of the admiralty before the act was passed to refuse costs to a ship in such cases, though it was otherwise blameless.

This duty cannot be said to be of strictly legal obligation; because no law has yet visited the offender with damages for a breach of it. Nor, indeed, would it be obligatory at all where life was safe, and a very great disproportion of the value of one vessel to the demurrage of the other made it inexpedient.

My view about the towage was this: It was necessary that the schooner should be towed; and, if a tug was hired and paid by either party, the towage was a part of the necessary and proper damage to be divided; and it was not a matter of importance which actually made the bargain or paid out the money. I have more doubt about allowing towage to the steamer herself; but, granting that the act was proper and necessary, and for the benefit of both parties, it seemed to me I might consider it as part of the damage which the common fault had caused to the steamer herself, and thus bring it into the aggregate of the losses. In this way the assessor has made it up. This, in effect, gives the libellants half towage, or it may be called half demurrage for time properly spent in consequence of the collision. Such an allowance may tend to render steamers more prompt to lend their aid, and thus reinforce the imperfect obligation above mentioned.

The libellants say they should likewise have half salvage. But that stands very differently. In the first place, the relations of the parties were such, as now appears, that it was for the interest of both that the damage should be diminished as much as possible. If it had been necessary to pay salvage to a stranger, both must have contributed; but that a salvage service should arise out of a disaster that was partly the fault of the salvors would be unheard of. The argument for the libellants is based upon the absence of a legal obligation to perform the service, such as prevents officers or men from being salvors of their own ship. No doubt, the usual definition of salvage would cover this case; for it was a maritime service in saving property by persons not already legally bound to its performance. This is an excellent definition. But it must not be forgotten that a salvage reward, in so far as it exceeds a mere quantum meruit for work and labor, is dependent upon a rule of public policy for the encouragement of promptness, skill, honesty, and enterprise on the part of seamen and ship-owners, and is forfeited not only by misconduct, but by incompetency, after the work is begun. I think it fairly follows, by parity of reasoning, that previous misconduct may have a similar effect. It was said that the seamen on board the steamer were not in fault, and that they at least should have salvage. But the towage here was done by the steamer: the seamen took no actual part in it of any consequence; and there is no reason to suppose they have lost any thing by the slight delay which it occasioned. Besides, where a vessel is in fault, the crew are often involved in its consequences, without any actual fault of their own. The cases are many where salvage has been lost or diminished by conduct which was really that of the master of the salving vessel only. He is the agent by necessity of the ship and all persons interested in her. If the fault had been wholly with the steamer, no discrimination could have been made in favor of the seamen to give them a reward which their vessel could not share. I do not mean to decide that individual seamen could never, under any conceivable circumstances, have salvage in such a case. The counsel for the libellants very candidly cited The Capella, 1 Adm. & Ecc. 356, which is against his recovery. I have found nothing else so directly in point.

Whether the costs, like the damages, should be added together and divided, or each should bear his own, seems to be one of doubt. Judge Sprague decided that where both parties were in fault, yet if one was very much the more so, he should bear all the costs: The Rival [Case No. 11,867]; see The Celt, 3 Hagg. 321. No question was made of the correctness of that decision, nor that the court has full legal discretion over the whole matter of costs to adapt its decrees to the equities of each case. But no facts are relied on here to take this case out of the ordinary rule, if there be one applicable to an equality of fault.

It is very difficult to find any rule from the decisions, in no one of which is there any argument or reason given at the bar or by the court. In the leading case of Hay v. Le Neve, 2 Shaw, App. 395, costs as well as damages were divided. So in The Washington, 5 Jur. 1067; while in The Wansfell, 1 Spinks, 271, costs were given to neither party. In this district we have always followed Hay v. Le Neve. Judge Davis divided the costs in a case decided in 1832: Sancry v. Farrow [unreported], and in Dimock v. Hathaway [unreported]; and Judge Sprague, in Lenox v. Winisimmet Co. [Case No. 8,248]; O'Neil v. Sears [Id. 10,530]. I did so in The Monticello [Id. 9,739], though this point is not reported, and Judge Leavitt, in Lucas v. The Thomas Swann [Id. 8,588]. On the other hand, costs have been refused to both parties in The Bedford [Id. 1,216]; Foster v. The Miranda [Id. 4,977]; The Nautilus [Id. 10,-058]; The Favorita [Id. 4,694].

There is one aspect of the question which does not appear to have received sufficient attention. If the loss is all suffered by one vessel, and her owner brings his libel, he will recover half his damages; and there is no reason why he should not, in general, recover

his full costs. It is the ordinary case of a prevailing party recovering less than he asks for; and if there has been no tender or offer of amends, and no equity peculiar to the individual case, it is according to the sound and reasonable law of all courts that he should recover costs. It would take a very long and uniform course of practice to establish any other rule in collision causes; and, although some of the decisions above cited were of that character, the point appears to have been overlooked. In examining some late authorities, since the above paragraph was written, I am happy to see that the recent practice in New York conforms to what I have suggested as the true rule, and gives costs to the libellant, if he alone has been injured and recovers half his loss. The Austin [Case No. 663]; The Baltic [Id. 824]; The Paterson [Id. 10,821]; The Avid [Id. 678].

Returning to the case of injury on both sides, and of cross-libels to recover them, and no very substantial difference of fault or other equity, there appears to be authority for dividing the costs, and for refusing them to both parties. The former practice, which has always been ours, seems to me quite consistent with the theory which divides the damages; and I shall adhere to it until the direct authority of an appellate court, or a very decided preponderance of general practice, shall be against it. Decree accordingly.